# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CCC INFORMATION SERVICES, INC.,   )
                                   )
             Plaintiff,         )
                                   )
      vs.                     )     Case No. 05 C 5486
                                   )
CHRIS TREVETHAN,           )
                                 )
             Defendant.     )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff CCC Information Services seeks a declaratory judgment that it is not in breach of any obligation relating to a letter agreement regarding a proposed license agreement for the use of software developed by Comp-Est, Inc. of which defendant Chris Trevethan was controlling shareholder. Trevethan has filed a motion to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). The Court denies Trevethan's motion to transfer for the reasons that follow.

### Facts

CCC specializes in providing technology solutions to assist insurance companies and collision repair facilities in dealing with automotive insurance claims. Chris Trevethan was the controlling shareholder of Comp-Est, which provided collision estimating software applications primarily to vehicle repair facilities. In February 1998, the Motor Information Systems Division of Hearst Business Publishing, Inc. purchased an option to buy substantially all of the assets of Comp-Est. Comp-Est and Hearst also entered into a joint venture agreement, one purpose of which was to allow the parties to pursue overseas marketing opportunities for Comp-Est collision estimating software. Comp-Est issued a license to the joint venture granting it certain rights to use the software in the designated territory. Trevethan and Hearst then agreed in a November 14,

2002 letter that the joint venture would grant Trevethan or his designated entity the right to use the Comp-Est software in the designated territory.

On February 26, 2003, CCC acquired substantially all of the assets of Comp-Est from Hearst. By that date, the license referenced in the November 14, 2002 letter agreement had not been issued. CCC acknowledged in a February 26, 2003 letter agreement with Trevethan that it would "join (the joint venture) in issuing the…License Agreement in accordance with the terms provided in…the (November 14) Confirmation Letter." Following this agreement, however, negotiations between the parties over this license agreement dragged on and were never concluded.

In October 2003, CCC sued Trevethan in Ohio state court for failure to tender certain of the Comp-Est assets that CCC had allegedly acquired, and Trevethan counterclaimed for money allegedly owed to him by CCC. Trevethan did not assert any claims relating to the license agreement at issue in this case. The parties settled settlement agreement excluded any claims relating to international licensing rights for the Comp-Est software.

Following the dismissal of the Ohio litigation, the parties did not discuss the license agreement, until Trevethan sent a letter to CCC's general counsel dated September 8, 2005, which threatened to file suit against CCC for a breach of contract relating to the license agreement "within the coming week." Compl. ¶ 19. Trevethan did not file suit as promised, and CCC filed the present suit for a declaratory judgment two weeks after receiving Trevethan's letter. Trevethan has since counterclaimed seeking damages from CCC.

CCC is a Delaware corporation headquartered in Chicago, Illinois. Trevethan lives in Upper Arlington, Ohio, a suburb of Columbus. CCC relocated the Comp-Est business, assets, and employees to Chicago shortly after the acquiring these assets and has continued to operate the Comp-Est business in Chicago since January 2004.

### Discussion

A district court may transfer a civil suit to any other district where it might have been

brought, "for the convenience of the parties and witnesses [and] in the interests of justice…." 28 U.S.C. § 1404(a).  The burden falls on the moving party to demonstrate that the proposed transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986).  In deciding a motion to transfer, a court considers the following factors relating to the convenience of the parties and witnesses:  "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties and (5) the convenience of witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).  A motion to transfer will be denied if transfer would merely shift the burden of inconvenience from one party to the other.  *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989).

       1.        **Plaintiff's choice of forum.**  A plaintiff's choice of forum is typically entitled to significant weight in deciding a motion to transfer venue, particularly where it is the plaintiff's home forum, *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981), but in the case of a declaratory judgment action this principle carries less force.  *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987).  The Seventh Circuit has cautioned against the use of "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff,'" *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993), and has noted that the purpose of a declaratory judgment action would be "aborted by its use as an instrument of procedural fencing either to secure delay or choose a forum." *Tempco*, 819 F.2d at 749-50.

       Defendant Trevethan contends he is the true plaintiff in this dispute and that CCC filed suit in Chicago, its home forum, to gain a tactical advantage.  But the very purpose of the Declaratory Judgment Act is to "enable those threatened to remove a cloud on their commercial activity, instead of being obliged to await the convenience of the threatening party." *Phillips Plastics Corp v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995).  CCC filed this action after Trevethan threatened to file suit within one week but then did not carry out

his threat.  Under the circumstances, it was entirely reasonable for CCC to seek a declaratory judgment; the Court sees nothing to indicate that it is using the Declaratory Judgment Act as "an instrument of procedural fencing" or for any reason other than to settle the dispute once and for all.  *See Russell Corp. v. Sara Lee Corp.,* 129 F. Supp. 2d 1165, 1169 (N.D. Ill. 2001) (declaratory judgment plaintiff "was directly threatened with a lawsuit unless it paid for a license, something it was unwilling to do; under the circumstances, it is entitled to have its rights determined.")

Under the circumstances, the Court concludes that CCC's choice of its home forum is entitled to some weight in the §1404(a) analysis.  *Kucala Enters., Ltd. v. Auto Wax Co.*, No. 02 C 1403, 2002 WL 1586415, *3 (N.D. Ill. July 18, 2002) (giving weight to declaratory judgment plaintiff's choice of forum); *Millennium Prods., Inc. v. Gravity Boarding Co.,* 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000) (same).

2.     **Situs of Material Events.**  The material events underlying this case took place in both Illinois and Ohio.  The parties' dealings that underlie their dispute largely took place by telephone, e-mail, and written correspondence.  For this reason, the site of the significant events has no great bearing on the issue of transfer.

3.     **Access to Sources of Proof/Convenience of Witnesses.**  "The convenience of witnesses is often the most important factor in deciding whether to grant a motion to transfer." *Andrade v. Chase Home Fin., LLC,* No. 04 C 8229, 2005 WL 3436400, at *7 (N.D. Ill. Dec. 12, 2005).  "In assessing this factor, the Court must consider the number of witnesses in each forum…the importance of their testimony," whether the witness can be compelled to testify, and expenses related to witness transportation and missed work.  *Id.; see also, e.g., Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999).  The convenience of expert witnesses and witnesses who are employees of a party to the case is assigned little weight, because the party can be expected to ensure their appearance at trial.  *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, *3 (N.D. Ill. July 28, 2005);

4

*Applied Web Systems, Inc. v. Catalytic Combustion Corp.*, No. 90 C 4411, 1991 WL 70893, *5 (N.D. Ill. Apr. 29, 1991). The convenience of non-party witnesses is "substantially more important than the convenience of party witnesses because the latter are within the party's control." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.,* No. 04 C 2728, 2004 WL 1921059, *4 (N.D. Ill. July 21, 2004).

Of eighteen potential non-party witnesses identified by the parties in their respective memoranda, at least eight live within the Northern District of Illinois, including six current CCC employees, one former CCC employee, and an attorney who provided legal services to CCC in connection with the negotiations with Trevethan. Of the ten potential witnesses who reside outside this District, five live in the Southern District of Ohio. None of these witnesses currently works for Trevethan. Two of these witnesses are former CCC attorneys; CCC has submitted affidavits from both of them in which they state that they are willing to appear for trial in Chicago. As for the three remaining Ohio residents, Trevethan has admitted that two will come to Illinois to testify if necessary, and he does not contend that the third would not do so. *See* Mem. in Support of Def's Mot. to Transfer at 12, 13.

In short, the balance of inconvenience to the unaffiliated witnesses is essentially in equipoise. Trevethan has failed to show that transfer to Columbus is clearly more convenient to the witnesses.

**4.** **Convenience of Parties.** This factor weighs slightly in favor of transfer. In evaluating this factor "the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum." *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.,* 200 F. Supp. 2d 941, 947 (N.D. Ill. 2002). Transfer of the case to Ohio would certainly be more convenient to Trevethan, just as keeping the case in Illinois would be more convenient to CCC. It is easy to understand why neither party wants to be the one to litigate outside of its home district. There is some reason to believe that the inconvenience to Trevethan of a trial in Illinois perhaps would be greater, as CCC, a corporate entity, is likely to be

more able to bear the expense of litigating outside its home forum (indeed, when CCC sued Trevethan in 2003, it filed the suit in Ohio).  This weighs in favor of transfer, though perhaps only slightly.

      **5.**      **Public Interest.**  In evaluating the "interests of justice" under § 1404(a), the Court looks to such concerns as docket congestion, judicial familiarity with the applicable law, the burden to a jurisdiction with no connection to the dispute, and the value of having a trial in the community where those affected live.  *Heller*, 883 F.2d at 1293; *see also, Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper Aircraft*, 454 U.S. at 260.  Trevethan's only argument in this regard is that the suit concerns his actions in Ohio and that this tilts the balance in favor of transferring the case there.  The Court disagrees; as discussed earlier, the suits concerns matters that took place not only in Ohio, but also in Illinois and elsewhere.  The public interest does not support holding the trial in Ohio rather than Illinois (or, for that matter, vice-versa).

### Conclusion

      The "convenience" factors assessed under § 1404(a) essentially cancel each other out in this case; CCC legitimately seeks a declaratory judgment and has an interest in proceeding in the forum it choice, but it is somewhat less convenient for Trevethan to litigate in this District than it would be for CCC to litigate in Trevethan's home district.  The Court concludes that Trevethan has failed to meet his burden of demonstrating that the proposed transferee forum is "clearly more convenient."  For these reasons, the Court denies defendant's motion to transfer is denied [docket no. 16-1].  The case is set for a status hearing on May 3, 2006 at 9:30 a.m.  Trevethan's Ohio counsel may participate by telephone if he wishes.

 

                            _____
                            MATTHEW F. KENNELLY
                            United States District Judge

Date:   February 13, 2006